EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| Ramón B. Rivera Grau (TS-15,670) | 2016 TSPR 212 196 DPR ____ |

Número del Caso: CP-2014-7

Fecha: 4 de octubre de 2016

Abogada del Querellado:

>Lcda. Daisy Calcaño López
>Lcdo. Luis Laguna Mimoso

Oficina de la Procuradora General:

>Lcda. Margarita Mercado Echegaray
>Procuradora General
>
>Lcda. Karla Pacheco Álvarez
>Subprocuradora General
>
>Lcda. Yaizamarie Lugo Fontánez
>Procuradora General Auxiliar

Comisionado Especial:

>Hon. Ygrí Rivera de Martínez

Materia: Conducta Profesional – La Suspensión será efectiva una vez advenga final y firme la Sentencia conforme a la Regla 45 del Reglamento del Tribunal Supremo sobre reconsideración.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Ramón B. Rivera Grau
(TS-15,670)

CP-2014-0007

PER CURIAM

En San Juan, Puerto Rico, a 4 de octubre de 2016.

Nos corresponde determinar si el Lcdo. Ramón B. Rivera Grau incurrió en conducta contraria al Código de Ética Profesional, infra, al preparar varios contratos de opción de compraventa sobre unos predios sin segregar y autenticar las firmas de los comparecientes, a la vez que fungía como representante legal de la parte vendedora en un pleito sobre ejecución de una hipoteca garantizada por la finca matriz.

I

El licenciado Rivera Grau fue admitido al ejercicio de la abogacía el 31 de enero de 2006 y a la práctica de la notaría el 23 de marzo de

2006. A mediados de septiembre de 2008, el licenciado Rivera Grau asumió la representación legal del Sr. Jesús Ramos Morales y la Sra. Nildes Josefina Morales León (matrimonio Ramos Morales) en una demanda contra el Municipio Autónomo de Caguas y la antigua Administración de Reglamentos y Permisos. Contestación a la Querella, págs. 2-3. Como resultado de ese proceso judicial, se obtuvieron los permisos necesarios para iniciar la construcción de viviendas individuales en un inmueble propiedad del matrimonio Ramos Morales.

El 26 de marzo de 2009, el matrimonio Ramos Morales, el Sr. Gerardo Vargas Figueroa y la Sra. Madeline Martínez Colón comparecieron ante el licenciado Rivera Grau y suscribieron un contrato de opción de compraventa que **preparó** el letrado a petición de las partes. El notario Rivera Grau legitimó las firmas de ese contrato mediante el testimonio número 918. Además, el licenciado Rivera Grau **asesoró** a las partes en torno a las consecuencias legales que implica una opción de compraventa. A tenor con las disposiciones de ese contrato de opción, el señor Vargas Figueroa y la señora Martínez Colón, entregaron al matrimonio Ramos Morales $7,000. Es importante destacar que en la cláusula sexta de ese contrato se dispuso que durante la vigencia de la opción, el matrimonio Ramos Morales estaba "impedido de vender, hipotecar, gravar o de enajenar de cualquier forma la propiedad antes descrita". Contrato de opción de compraventa de 26 de marzo de 2009, pág. 1.

Al *día después* de la otorgación del contrato de opción ante el licenciado Rivera Grau, este asumió formalmente la representación legal del matrimonio Ramos Morales en un pleito sobre ejecución de hipoteca que se ventilaba ante el Tribunal de Primera Instancia desde el 9 de marzo de 2009. Ese pleito involucraba el inmueble sobre el cual el licenciado Rivera Grau había redactado el contrato de opción, escrito que también se otorgó ante él. Luego, el 15 de octubre de 2009 y luego de varios incidentes procesales, el foro primario notificó una sentencia en la que declaró con lugar la demanda y autorizó la ejecución de la hipoteca que gravaba el inmueble.

Posteriormente, el 3 de noviembre de 2009, el matrimonio Ramos Morales, el señor Vargas Figueroa y la señora Martínez Colón suscribieron otro contrato, titulado *Recibo de depósito y extensión de opción de compraventa*. En ese contrato se reiteraron los términos del primer contrato de opción y se extendió el término de la opción por 180 días desde su vigencia a cambio de un pago de $15,000. El licenciado Rivera Grau también preparó este contrato de opción y autenticó las firmas de los comparecientes mediante el testimonio número 1207. Tres días más tarde, se firmó otro contrato titulado, *Recibo de depósito y enmienda a opción de compraventa*, en el cual se reiteraron los términos del primer contrato de opción de compraventa y además, se redujo el precio del predio sin segregar, sobre el cual recaía la opción, de $95,000 a $90,000. En ese

tercer contrato, el licenciado Rivera Grau, hizo un recuento de las cuantías entregadas en calidad de depósito por el señor Vargas Figueroa y la señora Martínez Colón que ascendían a $42,000. Por último, autenticó las firmas de los comparecientes mediante testimonio núm. 1271. A pesar de que el licenciado Rivera Grau era el representante legal del matrimonio Ramos Morales en el pleito sobre ejecución y sobre el cual ya había recaído una sentencia que declaró con lugar la demanda y que autorizó la ejecución de la hipoteca que gravaba el predio, no informó al señor Vargas Figueroa y la señora Martínez Colón sobre el estatus litigioso del inmueble. Es decir, no les advirtió sobre la posibilidad de que no pudiesen hacer valer la opción de compraventa que habían adquirido del matrimonio Ramos Morales. De hecho, a pesar de constarle personalmente y de haber redactado los contratos de opción, ni siquiera advirtió a los comparecientes sobre la existencia de un gravamen sobre el inmueble.

El 14 de diciembre de 2009, advenida final y firme la sentencia en el pleito de ejecución, el letrado Rivera Grau presentó, junto a la representación legal de RG Premier Bank, una moción titulada *Acuerdo sobre satisfacción de sentencia*. Como parte de ese acuerdo, se dispuso una serie de pagos para poner al día el préstamo hipotecario y evitar la venta en pública subasta de la propiedad. Asimismo, en el referido escrito se señaló, en lo pertinente, que:

13. En caso de incumplimiento por la parte demandada de cualesquiera de los términos de este

plan de repago, R&G, o el tenedor legítimo del pagaré hipotecario objeto de este pleito, podrá, sin aviso o notificación alguna, solicitar la ejecución de la sentencia, habiéndose declarado el pagaré vencido en su totalidad, ordenándose la venta en pública subasta del inmueble antes descrito para así satisfacer las sumas adeudadas. LA PARTE DEMANDANTE TENDR[Á] ADEM[Á]S DERECHO A RECLAMAR LA TOTALIDAD DE LA PARTIDA FIJADA PARA GASTOS, COSTAS Y HONORARIOS DE ABOGADO, O SEA, $79,655.00.

El 12 de enero de 2010, el matrimonio Ramos Morales suscribió otro contrato de opción de compraventa, esta vez con la Sra. Evelyn Zoé Pérez Ayala. Aunque el licenciado Rivera Grau no participó activamente en las negociaciones de las partes, sí **redactó** el contrato que recogió los acuerdos alcanzados y que las partes suscribieron eventualmente. También, **asesoró** a los comparecientes en torno al negocio jurídico y autenticó las firmas de las partes mediante el testimonio número 1239. Según las estipulaciones de ese contrato, la señora Pérez Ayala le entregó $7,000 al matrimonio Ramos Morales a cambio de una opción de compraventa por un término de 180 días a partir de la segregación del predio. En el caso de la señora Pérez Ayala, el licenciado Rivera Grau tampoco estimó "prudente" entrar a discutir el estatus ni el resultado del caso sobre ejecución que disponía del inmueble en el cual se encontraba el predio sin segregar sobre el cual esta adquirió una opción. Contestación a la Querella, pág. 11. Es decir, a pesar de que el acuerdo de satisfacción de sentencia establecía expresamente que cualquier incumplimiento daría lugar a la ejecución del inmueble, el

licenciado Rivera Grau entendió que el asunto estaba "resuelto" y que el matrimonio Ramos Morales continuaba como dueño en pleno dominio del inmueble. <u>Contestación a la Querella</u>, pág. 13.

El 5 de marzo de 2010, el señor Vargas Figueroa, la señora Martínez Colón y el matrimonio Ramos Morales suscribieron otro documento, titulado *Recibo de depósito y tercera enmienda a opción de compraventa* ante el licenciado Rivera Grau. En este otro contrato, las partes acordaron reducir el costo del predio de terreno a $80,000 del ya reducido precio de $90,000, a cambio de un depósito adicional de $30,000. Así, según expuso el licenciado Rivera Grau en el documento que redactó, tanto el señor Vargas Figueroa como la señora Martínez Colón entregaron un total de $72,000, al tomar en consideración los depósitos entregados en virtud del contrato original y sus sucesivas enmiendas. El licenciado Rivera Grau también autenticó las firmas de los comparecientes mediante testimonio número 1271.

Aunque para el 5 de mayo de 2010, el licenciado Rivera Grau había renunciado a la representación legal del matrimonio Ramos Morales en el pleito de ejecución, estos comparecieron ante él, junto a la parte compradora, para la preparación y firma de otro contrato de opción de compraventa sobre otro de los predios del inmueble. Esta vez, el adquirente de la opción era el Sr. Edwin Xavier López Díaz. Luego de recoger la voluntad de los

comparecientes, el licenciado Rivera Grau redactó el contrato y autenticó las firmas de las partes mediante testimonio número 1368. A tenor con las disposiciones contractuales, el señor López Díaz entregó, con anterioridad a la otorgación del contrato de opción, $5,000 al matrimonio Ramos Morales.[1] Sin embargo, el licenciado Rivera Grau tampoco le informó al señor López Díaz el estatus litigioso del predio sin segregar sobre el que adquirió la opción, a pesar de constarle personalmente. Tampoco advirtió de la posibilidad de que nunca se pudiera ejercer la opción.

Al ver que el tiempo transcurría y que no había desarrollos en torno al inmueble y sus predios, los compradores hicieron sus respectivas investigaciones. De esa manera, se enteraron de que el inmueble se encontraba en proceso de ejecución por el R&G Premier Bank y que el licenciado Rivera Grau había sido el representante legal del matrimonio Ramos Morales en ese pleito. En particular, el señor López Díaz supo que el predio de terreno se encontraba en proceso de ejecución cuando una institución financiera le negó un préstamo hipotecario.

Por estos hechos, las familias presentaron las quejas AB-2011-417, AB-2012-02, AB-2012-114 ante este Tribunal. En síntesis, alegaron que el licenciado Rivera Grau redactó unos contratos de opción de compraventa y autenticó las

---

[1] Según el referido contrato, el señor López Díaz debía entregar $5,000 adicionales en un periodo no mayor de treinta días a partir de su otorgación.

firmas de todos sus comparecientes. Asimismo, señalaron que el licenciado Rivera Grau era el representante legal del matrimonio Rivera Morales en un procedimiento de ejecución de una hipoteca que gravaba los terrenos opcionados. En sus contestaciones a las quejas, el letrado negó tajantemente la comisión de conducta ilegal o que hubiese llevado a cabo algún acto antiético y que, como notario, no asume responsabilidad por el cumplimiento de los negocios jurídicos. En específico, argumentó que si bien es cierto que existía un procedimiento de cobro de dinero y ejecución de hipoteca contra el matrimonio Ramos Morales, no es menos cierto que el procedimiento de ejecución "había sido detenido" en virtud del acuerdo de satisfacción de sentencia, por lo que la parte vendedora mantenía el dominio sobre los predios -sin segregar- que dio en opción. Contestación a la Querella, pág. 11. En ese sentido, argumentó que los contratos que autenticó eran negocios jurídicos válidos y que, a pesar de existir una sentencia final y firme, no era correcto exponer que los predios estaban en proceso de ejecución. Además, adujo que tampoco existía un conflicto de interés en su gestión porque los quejosos no fueron parte en ninguno de los procedimientos en los cuales él fue el representante legal del matrimonio Ramos Morales y que involucraban el inmueble en cuestión. También expuso que las tres quejas en su contra constituyen los primeros señalamientos desde que inició su práctica.

El 26 de octubre de 2012, en aras de facilitar el trámite disciplinario, ordenamos la consolidación de las quejas AB-2011-417, AB-2012-02, AB-2012-114. También remitimos el asunto a la Oficina de Inspección de Notarias (ODIN) para investigación y la preparación del informe correspondiente.

En respuesta a esa encomienda, el Director de la ODIN presentó su informe de hallazgos en el que concluyó que el licenciado Rivera Grau se apartó de los Cánones 18 y 35 de Ética Profesional, infra. En específico, señaló que el licenciado no cumplió a cabalidad con su función notarial al no ilustrar ni dar consejo legal a los comparecientes. Asimismo, debido a que el licenciado Rivera Grau redactó los contratos privados previo a autenticar las firmas de los comparecientes, el Director de la ODIN determinó que el abogado no actuó con sinceridad, pues debió informar a los quejosos sobre el estatus litigioso de los predios de terreno objetos de opción. Por último, el Director recomendó que impusiéramos la sanción disciplinaria que estimáramos conveniente.

El licenciado Rivera Grau reaccionó al informe presentado por la ODIN. En su comparecencia, argumentó nuevamente que no es responsable del cumplimiento de las disposiciones contractuales por los otorgantes y que, en lo referente a las tres quejas en su contra, siempre se condujo con rectitud y sinceridad. Añadió que los quejosos tenían conocimiento de la difícil situación económica por

la que estaba pasando el matrimonio Ramos Morales. Así, atribuyó que las quejas en su contra eran producto de "una percepción particular, olvidando que simplemente todo se limita a posiciones distintas y cayendo penosamente en lo que luce como un asunto personal". <u>Escrito en reacción a informe presentado por el Lcdo. Manuel E. Avilés De Jesús y en cumplimiento de orden</u>, pág. 6. Además, argumentó que no medió una función dual de abogado-notario ni un conflicto de interés al autenticar las firmas. Por último, anejó a su comparecencia tres declaraciones juradas de compañeros letrados en las que se asegura que cuenta con buena reputación en la comunidad y se da fe de la calidad humana del licenciado Rivera Grau.

Por su parte, los quejosos también se expresaron en torno al informe. En sus respectivos escritos, reiteraron sus posiciones. En específico, relataron que el licenciado Rivera Grau le faltó a la verdad con su versión de los hechos y que él tenía el deber de redactar los contratos con claridad. Asimismo, todos negaron enfáticamente que conocieran los problemas económicos del matrimonio Ramos Morales y contradijeron que se hubiese dialogado sobre ese aspecto en la oficina del licenciado Rivera Grau. Por último, el señor Vargas Figueroa, la señora Martínez Colón y la señora Pérez Ayala expusieron el dolor, el sufrimiento y la angustia que les he representado esta situación. En particular, la pérdida de miles de dólares de sus ahorros. Examinado el Informe del Director de la ODIN, ordenamos a

la Procuradora General que presentara la querella correspondiente.

La Procuradora General le imputó al licenciado Rivera Grau la violación de los Cánones 18, 35 y 38 de Ética Profesional, 4 LPRA Ap. IX, C.18, C.35, C.38. El letrado contestó la querella y, en esencia, negó que hubiese actuado de forma antiética y que, a lo sumo, todo se debió a un "error de juicio" en su desempeño. Contestación a la Querella, pág. 16. El señor Vargas Figueroa, la señora Martínez Colón y la señora Pérez Ayala comparecieron, y en resumen, se opusieron a los argumentos que presentó el licenciado Rivera Grau. De hecho, señalaron específicamente que el licenciado Rivera Grau les "ocultó" información que hubiese influenciado la decisión de adquirir las opciones. Así las cosas, el 11 de enero de 2015, designamos a la exjueza del Tribunal de Apelaciones, Hon. Ygrí Rivera de Martínez, como Comisionada Especial para que recibiera prueba, realizara sus determinaciones de hecho y nos presentara sus recomendaciones.

Luego de varios trámites procesales, el 11 de agosto de 2015, se celebró la conferencia con antelación a la vista ante la Comisionada Especial. En esa vista, las partes expresaron que no existía controversia sobre los hechos y que el caso se sometería por el expediente. Sin embargo, las partes acordaron que el licenciado Rivera Grau declararía, como en efecto hizo en esa vista, sobre su sentir en torno al proceso disciplinario. No se presentó

evidencia adicional, pero la Procuradora General no se opuso a que se admitieran las declaraciones juradas sobre el carácter del letrado para que la Comisionada Especial les asignara el valor probatorio que estimara procedente. Por último, se acordó que el licenciado Rivera Grau presentaría un memorando de derecho dentro de un término de treinta días y que la Procuradora General tendría la oportunidad de expresarse en torno a él. Así, una vez vencidos esos términos, el caso quedaría sometido para que la Comisionada Especial rindiera su informe.

Según acordado y luego de realizada la vista, el licenciado Rivera Grau presentó un memorando en el que argumentó que no actuó de mala fe y que el proceso ha sido uno aleccionador. En ese escrito, aseguró estar arrepentido y que, de haber prevenido las consecuencias de su omisión y error de juicio "no intencional", no hubiese autenticado las firmas de los comparecientes. <u>Memorando sobre atenuantes</u>, pág. 3. Por último, expuso que este es el primer procedimiento disciplinario que ha enfrentado en sus diez años de carrera profesional y que no hubo ánimo de lucro en sus actuaciones, pues devengó $50 por cada contrato que preparó y autenticó. Por su parte, la Procuradora General reaccionó a ese escrito y expresó que el licenciado Rivera Grau no testificó sobre los méritos de las quejas y que no presentó prueba sobre sus alegaciones en torno a su buena fe. También destacó que a pesar de que se trata del primer proceso disciplinario del letrado, este

versa sobre tres quejas consolidas. Además, el señor Vargas Figueroa y la señora Martínez Colón refutaron los argumentos que presentó el letrado y esbozaron que este no realizó acto alguno para evitar que perdieran sus ahorros, a pesar de que le constaba que era factible que ocurriera tal pérdida.

Por último, la Comisionada Especial rindió un informe con sus determinaciones de hecho y conclusiones de derecho, las cuales acogemos.

II

El Código de Ética Profesional, 4 LPRA Ap. IX, recoge las normas que rigen la clase togada en nuestra jurisdicción. In re Crespo Peña, Op. del 6 de abril de 2016, 2016 TSPR 65, pág. 4, 195 DPR ___ (2016). Por eso, todo abogado debe realizar su labor con estricto apego a estas normas. Así, el abogado, como funcionario del tribunal, debe conducirse con diligencia, honradez y evitar incurrir en conducta impropia en el ejercicio de su labor.

A.   El Canon 18 de Ética Profesional, supra, le impone al abogado "el deber de ser competente, cuidadoso y diligente al tramitar los asuntos que su cliente le encomienda y al defender los intereses de este último". In re Toro González II, 193 DPR 877, 888 (2015). Ese deber ético, aunque toma un matiz distinto, cobra mayor relevancia cuando el abogado ejerce la notaría, pues sus actuaciones son la base sobre la que se asienta la fe pública notarial. In re Vargas Velázquez, 190 DPR 730, 735 (2014); véase, además, In re

Ortiz Medina, 175 DPR 43, 50 (2008). Recordemos que el notario debe "recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirles autoridad a los mismos". Art. 2 de la Ley Notarial, 4 LPRA sec. 2002. Por esa razón, "tiene que asegurarse de obtener el consentimiento informado de los otorgantes **haciéndoles todas las explicaciones, aclaraciones y advertencias que sean necesarias"**. (Énfasis suplido) In re Toro González II, supra, pág. 888, citando a In re Jiménez Brackel, 148 DPR 287, 295 (1999).

B.   Por otro lado, el Canon 35 de Ética Profesional, supra, dispone, en lo pertinente, que "[l]a conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada". Además, el Canon 35, supra, extiende ese deber de sinceridad "al examinar los testigos, al **redactar afidávit u otros documentos** […]". Véase, In re Martínez, Odell I, 148 DPR 49, 53-54 (1999). Así, el Canon precitado no permite que tanto el abogado como el notario se valgan de medios que sean incompatibles con la verdad. Por eso, "hemos expresado que la conducta de un abogado debe ser sincera y honrada **frente a todos y ante todo tipo de acto"**. (Énfasis suplido) In re Vázquez Pardo, 185 DPR 1031, 1043 (2012). El deber impuesto por el Canon 35, supra, es de tal trascendencia que se infringe con el simple hecho de faltar a la verdad,

independientemente de los motivos que tenga el abogado. In re Vázquez Pardo, supra, págs. 1043-1044. En ese aspecto, no es necesario mentir afirmativamente para transgredir el Canon 35, supra, pues es suficiente omitir información material que le consta personalmente al abogado para incumplir con el criterio de pureza y honestidad que exige esta norma ética. Véase In re Nieves Nieves, 181 DPR 25, 41 (2011) ("[E]l abogado que provee al tribunal información falsa o que no se ajuste a la verdad, o que oculte información que deba ser revelada, incumple con este canon."). En fin, el compromiso de un abogado con la verdad debe ser **siempre incondicional**. In re Buso Aboy, 166 DPR 49, 63 (2005).

En cuanto a la aplicación de este precepto a la función notarial, hemos dispuesto que "es imprescindible que el notario observe la mayor pureza y honestidad en el descargo de la fe pública notarial". (Cita omitida) In re Cruz Mateo, 171 DPR 781, 786 (2007). De hecho, una vez el notario recibe e interpreta la voluntad de las partes, este está obligado a descargar su obligación conforme le exige la ley y la ética. In re González Maldonado, 152 DPR 871, 895 (2000). El Canon 35, supra, puede transgredirse por medio de un desempeño profesional carente de la cautela y el celo que demanda la función pública del notario, o de una confianza desmesurada en las manifestaciones de otros compañeros de la profesión y de los otorgantes. In re Vera Vélez, 148 DPR 1, 8 (1999). En aras de evitar que un

notario, consciente o inconscientemente, asevere un hecho falso, este tiene el deber de hacer averiguaciones mínimas y cuando tenga dudas sobre lo expresado por el otorgante, debe indagar más allá de lo requerido comúnmente. Íd., pág. 9.

En torno a los testimonios de autenticidad, el Art. 56 de la Ley Notarial, 4 LPRA sec. 2091, establece que un notario no asume responsabilidad por el contenido de los documentos privados cuyas firmas legitime. Sin embargo, esa disposición no sirve de manto protector ante la negligencia o dejadez del notario en su desempeño profesional. In re Muñoz Fernós, 184 DPR 679, 687 (2012), citando a In re Montañez Miranda, 157 DPR 275, 282-283 (2002). Así, aun cuando el notario no es responsable por el contenido de un escrito en el cual da testimonio de firma, este no puede legitimar un documento si conoce de la falsedad de una de las expresiones o cuando tiene serias dudas sobre alguna de ellas. In re Montañez Miranda, supra, pág. 283. Ahora bien, esta protección que otorga la ley no opera cuando es el propio notario quien redacta o prepara el documento cuyas firmas legitima. In re Criado Vázquez, 155 DPR 436, 454 (2001). De esta manera, un notario no se exime de responsabilidad cuando da testimonio de firma de un documento del cual él es autor.

C. Finalmente, el Canon 38 de Ética Profesional, supra, señala, en lo pertinente, que "[e]l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del

honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales […]". En ese sentido, el Canon 38, supra, también impone a los abogados "la obligación de evitar la conducta impropia en su vida profesional y personal […]". (Citas omitidas) In re Santiago Concepción, 189 DPR 378, 405 (2013). Por lo tanto, la clase togada siempre debe desempeñarse con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen. In re Toro Iturrino, 190 DPR 582, 591 (2014). Esta norma ética cobra singular importancia en el campo de la Notaría, pues dada su función social, el notario debe absoluta imparcialidad a los comparecientes y no solo a alguno de ellos. In re Matos Bonet, 153 DPR 296, 300-301 (2001).

En In re Matos Bonet, supra, el notario otorgó una escritura de compraventa sobre un inmueble **mientras** era el representante legal de la parte demandada en un caso sobre cumplimiento específico de un acuerdo verbal de compraventa. El notario tampoco informó a la parte compradora sobre el estatus litigioso del inmueble. Es menester destacar que, previo al otorgamiento del instrumento público, la parte compradora no fue cliente del notario. En ese caso, analizamos lo dispuesto por la Regla 5 del Reglamento Notarial, 4 LPRA Ap. XXIV, y concluimos que un notario debe abstenerse de autorizar documentos sobre "un bien inmueble que es objeto de un pleito en el cual él actúa como abogado". Íd., pág. 300; véase, además,

In re Chiques Velázquez, 161 DPR 303 (2004); In re Avilés, Tosado, 157 DPR 867 (2002). Por otro lado, en In re Toro Iturrino, supra, reiteramos la prohibición general de ejercer una función dual de abogado-notario y en, específico, señalamos, que:

> La expectativa del abogado-notario de, una vez otorgado el documento en el cual actuó como notario, activar una relación de abogado-cliente con uno de los otorgantes o de mantener una relación de ese tipo que existía previo al otorgamiento del documento, **trastoca la presunción de imparcialidad que protege toda labor del notario y empaña la fe pública de la cual éste es custodio.** (Énfasis suplido) Íd., pág. 594, citando a In re Colón Ramery (Reconsideración), 138 DPR 793, 797-798 (1995).

Después de todo, uno de los propósitos de la prohibición de la función dual de abogado-notario es "proteger la apariencia profesional de los notarios y evitar que su conducta como depositario de la fe pública notarial sea maculada por escepticismos de impropiedad y desconfianza". In re Martínez Almodóvar, 180 DPR 805, 826 (2011). Así, el letrado que no se conduce de acuerdo a esta norma, contraviene los postulados del Canon 38, supra. In re Toro Iturrino, supra, pág. 595.

III

A. Al licenciado Rivera Grau se le imputa transgredir los Cánones 18, 35 y 38 del Código de Ética Profesional, supra. Luego de evaluar cuidadosamente los hechos ante nuestra consideración, el informe de la Comisionada Especial y la posición del letrado, concluimos que este se apartó de lo que dictan los precitados cánones.

En este caso, el licenciado Rivera Grau redactó y autenticó las firmas de los otorgantes en varios contratos privados de opción de compraventa, a pesar de que le constaba que el inmueble y, por lo tanto, los predios sin segregar, eran objeto de un pleito de ejecución de hipoteca. La violación del letrado estriba en no informar a las partes sobre las implicaciones que tenía el proceso de ejecución de hipoteca sobre el negocio jurídico que llevaron ante él. El abogado Rivera Grau no podía limitarse a asesorar en torno al negocio jurídico que comprende una opción de compraventa cuando le constaba personalmente que había una razón que podía evitar la materialización del negocio jurídico que se perfeccionó por y ante él. Su asesoría incompleta, en este aspecto, violentó los preceptos más básicos del Canon 18 de Ética Profesional, supra. No importa cuál fuera la opinión del letrado en torno a la capacidad del matrimonio Ramos Morales de cumplir las disposiciones del *Acuerdo de satisfacción de sentencia*, lo cierto es que era plausible que los quejosos nunca estuviesen en posición de ejercer la opción que adquirieron del matrimonio.

El licenciado Rivera Grau escogió ser "prudente" y no discutir con los comparecientes el hecho de que el inmueble sobre el cual se establecieron opciones de compraventa, se encontraba en medio de un proceso litigioso de ejecución de hipoteca. No lo discutió aunque ese proceso hacía probable que los comparecientes nunca pudieran ejercitar la opción

que estaban adquiriendo mediante contratos que él mismo preparó. No cabe duda de que la información que el licenciado Rivera Grau omitió intencionalmente era relevante y necesaria para que los compradores ejercieran su criterio de manera informada. Esas omisiones, aun ausente mala fe, apartaron al licenciado Rivera Grau de la obligación de actuar de forma honrada y sincera en todo momento. Así, pues, transgredió los postulados del Canon 35 de Ética Profesional, supra.

Finalmente, el desempeño del licenciado Rivera Grau como notario del matrimonio Ramos Morales en la redacción y autenticación de las firmas de los contratos de opción que involucraban el inmueble del pleito del cual este fue representante legal del matrimonio, violó el Canon 38 de Ética Profesional, supra. Es irrelevante el ánimo que motivó las actuaciones del licenciado Rivera Grau. Este debió abstenerse de participar en el perfeccionamiento de cualquier negocio jurídico que involucrara al matrimonio Ramos Morales y el inmueble en cuestión. Al asumir la función dual de abogado-notario, el licenciado Rivera Grau permitió que sus actuaciones se vieran irremediablemente impregnadas de impropiedad y absoluta desconfianza. Por esa razón, el letrado incurrió en conducta impropia. Además, este tampoco se esforzó al máximo para exaltar el honor y la dignidad de la profesión.

B. Al determinar la sanción disciplinaria que se impondrá a un abogado que haya incurrido en conducta contraria a los

Cánones del Código de Ética Profesional, consideramos los siguientes factores: (1) la reputación del abogado en la comunidad; (2) su historial previo; (3) si constituye su primera falta y si no ha causado perjuicio a alguna parte; (4) la aceptación y arrepentimiento sincero por las imputaciones; (5) la defensa frívola de su conducta; (6) si se trata de una conducta aislada; (7) el ánimo de lucro; y (8) cualquier otra consideración atenuante o agravante aplicable a los hechos. Véanse: In re Nazario Díaz, Op. de 26 de mayo de 2016, 2016 TSPR 111, pág. 23, 195 DPR __ (2016); In re De León Rodríguez, 190 DPR 378, 396 (2014).

Resalta el hecho de que hubo un daño pecuniario sustancial a varias familias que entregaron ahorros reunidos con sumo esfuerzo, lo que, sin duda, también les ha causado desasosiego y sufrimiento. Además, no estamos ante un evento aislado. Es decir, los "errores de juicio" del licenciado Rivera Grau ocurrieron en, al menos, cinco ocasiones separadas y motivaron tres quejas distintas. Incluso, los hechos que dieron base a una de las quejas, ocurrieron luego de que el licenciado Rivera Grau renunciara a la representación legal del matrimonio Ramos Morales en el caso de ejecución de hipoteca por diferencias de criterio. Asimismo, en este caso medió ánimo de lucro de parte del licenciado Rivera Grau, pues cobró honorarios por sus servicios.

Por otro lado, el informe de la Comisionada Especial nos sugiere dos atenuantes. Estos son que es el primer

proceso disciplinario del licenciado Rivera Grau y que este se mostró sinceramente arrepentido durante el proceso.[2] Además, en el expediente constan declaraciones juradas en las que se asevera que el licenciado Rivera Grau goza de buena reputación.

IV

Ante el escenario descrito, nos vemos obligados a ejercer nuestro poder inherente de regular la profesión jurídica en Puerto Rico. Así pues, al tomar en cuenta las consecuencias de la conducta del notario y los atenuantes que señaló la Comisionada Especial, suspendemos al Lcdo. Ramón B. Rivera Grau inmediatamente del ejercicio de la abogacía y la notaría por el término de seis meses.

Se le ordena al señor Rivera Grau a notificar a todos sus clientes sobre su inhabilidad para continuar representándolos y devolverles cualesquiera honorarios recibidos por servicios profesionales no realizados. De igual forma, tendrá que informar inmediatamente de su suspensión a cualquier sala del Tribunal General de Justicia o foro administrativo en el que tenga algún trámite pendiente. Además, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro

---

[2] Todos los quejosos se expresaron en torno al informe de la Comisionada Especial y, en particular, se opusieron a la consideración de atenuantes. Por su parte, el señor Vargas Figueroa, la señora Martínez Colón y el señor López Díaz señalaron que no creen en el supuesto arrepentimiento del licenciado Rivera Grau y que este nunca se ha disculpado por lo sucedido con ellos.

del término de 30 días contados a partir de la notificación de la presente Opinión *Per Curiam* y Sentencia.

Asimismo, se le ordena al Alguacil de este Tribunal incautar inmediatamente la obra y el sello notarial del señor Rivera Grau y entregar los mismos al Director de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Notifíquese personalmente esta Opinión *Per Curiam* y Sentencia al señor Rivera Grau a través de la Oficina del Alguacil de este Tribunal.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Ramón B. Rivera Grau
(TS-15,670)

CP-2014-0007

SENTENCIA

En San Juan, Puerto Rico, a 4 de octubre de 2016.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de esta Sentencia, se suspende al Lcdo. Ramón B. Rivera Grau inmediatamente del ejercicio de la abogacía y la notaría por el término de seis meses.

Se le ordena al señor Rivera Grau a notificar a todos sus clientes sobre su inhabilidad para continuar representándolos y devolverles cualesquiera honorarios recibidos por servicios profesionales no realizados. De igual forma, tendrá que informar inmediatamente de su suspensión a cualquier sala del Tribunal General de Justicia o foro administrativo en el que tenga algún trámite pendiente. Además, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de 30 días contados a partir de la notificación de la presente Opinión *Per Curiam* y Sentencia.

Asimismo, se le ordena al Alguacil de este Tribunal incautar inmediatamente la obra y el sello notarial del señor Rivera Grau y entregar los

mismos al Director de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Notifíquese personalmente esta Opinión *Per Curiam* y Sentencia al señor Rivera Grau a través de la Oficina del Alguacil de este Tribunal.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Rivera García no intervinieron.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo