EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Allan A. Peña Ríos <br> (TS-11,445) | 2019 TSPR 52 <br><br> 202 DPR ____ |

Número del Caso:  CP-2016-5


Fecha: 20 de marzo de 2019


Oficina del Procurador General:

    Lcda. Karla Z. Pacheco Álvarez
    Subprocuradora General

    Lcdo. Joseph Feldstein Del Valle
    Subprocurador General

    Lcda. Yaizamarie Lugo Fontanez
    Procurador General Auxiliar

Abogado del Querellado:

    Lcdo. José J. Nazario de la Rosa
    Lcdo. Carlos E. Gómez Menéndez


Comisionada Especial:

    Hon. Georgina Candal Segurola



Materia:  Conducta Profesional – La suspensión será efectiva el 26 de marzo de 2019. Fecha en que se le notificó al abogado de su suspensión inmediata.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Allan A. Peña Ríos                    CP-2016-0005
(TS-11,445)

**EL JUEZ ASOCIADO SEÑOR RIVERA GARCÍA emitió la opinión del Tribunal.**

En San Juan, Puerto Rico, a 20 de marzo de 2019.

Otra vez más nos vemos forzados a ejercer nuestro poder disciplinario para separar al Lcdo. Allan A. Peña Ríos (licenciado Peña Ríos o letrado) de la profesión legal por quebrantar los Cánones 18, 19, 23, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Esto, debido a su comportamiento al aceptar un acuerdo transaccional, sin informárselo y ni consultárselo a su clienta, endosar el cheque producto del negocio con el nombre de esta y depositarlo en la cuenta bancaria de este.

Narraremos el marco fáctico que conllevó nuestra decisión.

**I**

El 18 de enero de 1996 admitimos al licenciado Peña Ríos a la profesión legal, mientras que el 29 de enero de 1996 juramentó como notario.

El asunto disciplinario ante nuestra consideración inició el 27 de junio de 2014, cuando el Lcdo. David J. Castro Anaya ——Director Interino de la División de Conducta de Mercadeo de la Oficina del Comisionado de Seguros de Puerto Rico—— nos sometió una investigación de la cual, a su juicio, era posible inferir que el letrado quebrantó los postulados éticos que imperan en la abogacía, así como otras disposiciones penales. Explicó que la Sra. Nérida Galíndez Osorio (señora Galíndez Osorio o clienta) contrató los servicios profesionales del licenciado Peña Ríos para incoar una acción contra la aseguradora Triple-S por una caída que sufrió.[1] Indicó que el letrado transó la reclamación extrajudicialmente sin contar con el aval de la señora Galíndez Osorio y que la firma de esta fue falsificada en un formulario de relevo. Expresó que la aseguradora emitió un cheque a nombre de la clienta y del licenciado Peña Ríos y se lo entregó a este último. Apuntó que, acto seguido, el letrado depósito el instrumento en su cuenta bancaria y que el endoso de la señora Galíndez

---

[1] En el *Contrato de Servicios Profesionales* suscrito se pactó lo siguiente: "EL CLIENTE solicita los servicios profesionales de EL ABOGADO, a los efectos que le represente en un caso sobre una Reclamación de Daños y Perjuicios ante los tribunales del Estado Libre Asociado de Puerto Rico contra SEGUROS TRIPLE S Y SANTA JUANITA HOUSING PART[N]ERSHIP".

Osorio también fue falsificado. Manifestó que no fue hasta un año después que la señora Galíndez Osorio se enteró del acuerdo transaccional y del pago que el letrado recibió.

El 8 de agosto de 2014 el licenciado Peña Ríos replicó la queja. Así las cosas, enviamos el asunto al Procurador General para que investigara la conducta denunciada y sometiera un informe. El 13 de abril de 2016 la entonces Procuradora General presentó el informe en el cual concluyó que existía prueba clara, robusta y convincente de que el letrado incurrió en infracciones a los Cánones 18, 19, 23, 35 y 38 del Código de Ética Profesional. El 27 de abril de 2016 el licenciado Peña Ríos contestó el informe. Con el beneficio de ambas partes, el 27 de mayo de 2016 dictamos una resolución en la que autorizamos a la Procuraduría General a incoar la querella correspondiente.

Según pedido, el 27 de julio de 2016 la entonces Procuradora General sometió la *Querella*, en la que imputó al letrado los cargos siguientes:

> Primer y Segundo Cargos: El licenciado Peña Ríos no defendió adecuadamente los intereses de su clienta, de la manera que la profesión jurídica estima adecuada y responsable conforme a los preceptos del Canon 18 de Ética Profesional, ni mantuvo informada a su cliente sobre todo asunto de importancia que surgió en su caso, conforme al Canon 19 de Ética Profesional. Ello, al no mantener informada a su clienta ni consultarle asuntos importantes relacionados a la gestión encomendada, como la aceptación de la oferta de transacción, el endoso de un cheque remitido, el depósito de su cheque en una cuenta perteneciente al letrado y la retención del mismo por más de un año.

Tercer Cargo: El licenciado Peña Ríos violó los preceptos del Canon 23 de Ética Profesional, el cual dispone que la naturaleza fiduciaria de las relaciones entre abogado y cliente exigen que estas estén fundadas en la honradez absoluta y que se dé pronta cuenta del dinero u otros bienes del cliente que vengan en posesión. El licenciado Peña Ríos atentó contra el deber de fiducia y los preceptos del Canon 23 al endosar el cheque por su clienta, depositarlo en su cuenta de banco y retener el dinero que pertenecía a esta por más de un año, independientemente de si tenía o no la intención de apropiárselo.

Cuarto Cargo: El licenciado Peña Ríos infringió los preceptos de sinceridad y honradez del Canon 35 de Ética Profesional al firmar por su clienta la carta de descargo o relevo de la aseguradora y el endoso del cheque emitido.

Quinto Cargo: El licenciado Peña Ríos violó el Canon 38 de Ética Profesional al no exaltar el honor y la dignidad de la profesión, aunque conlleve sacrificios profesionales, no evitar la apariencia de conducta profesional impropia, ni actuar de forma digna y honorable. Atentó contra dichos preceptos al no informar ni consultar con su clienta la aceptación de la oferta de transacción; al firmar el relevo o carta de descargo y el endoso del cheque; y al depositar la compensación de esta en su cuenta, reteniendo el dinero de su clienta por más de un año. (Énfasis suprimido).

En vista de estas atribuciones, el 31 de octubre de 2016 el letrado presentó su *Contestación a querella*. Relató que el 18 de junio de 2012 la señora Galíndez Osorio lo contrató para que la auxiliara en el reclamo de unos daños y perjuicios que sufrió a causa de un accidente que tuvo en el edificio donde residía. Explicó que, previo a asumir la causa, Triple-S había cursado una investigación y había determinado que no tenía responsabilidad, por tanto, cerró el caso. Manifestó que

al día siguiente de ser contratado remitió una carta a la aseguradora con el propósito de reclamar los daños, pero que esta, nuevamente, negó su responsabilidad. Aseveró que se comunicó con su clienta para obtener más evidencia médica. Empero, esta replicó que, dado a su estado de salud y la negativa de los doctores en ofrecer información médica, estaba imposibilitada de adquirir más prueba. *Alegó* que por ello informó a la señora Galíndez Osorio que continuaría con la evidencia provista a fin de obtener una transacción a su favor y que esta lo autorizó. Narró que solicitó a Triple-S que reconsiderara su decisión y que efectuó varios trámites que no son necesarios pormenorizar.

Expresó que, por sus gestiones, el 4 de abril de 2013 la aseguradora le envió una oferta transaccional final y firme por $ 6,000, junto con una carta de descargo, y que "vino condicionada a una aceptación por escrito dentro de 24 horas o sería retirada".[2] Acto seguido, relató lo siguiente:

> En ese momento, y como abogado con experiencia en el manejo de este tipo de casos, entendí que la oferta además de ser una final de parte de la compañía aseguradora era una justa y razonable para mi cliente. A base de este criterio, y de la autorización expresada por mi cliente para que continuara el caso a base de la prueba médica disponible en mi expediente, **procedí a aceptar dicha oferta en representación de ella. Ese mismo día y en representación de la cliente firmé la carta de Descargo/Relevo enviada por la aseguradora considerando el término de tiempo extendido por la aseguradora.**

---

[2] *Contestación a querella*, pág. 3.

> […] El viernes 5 de abril de 2013, en representación de mi cliente, recogí el cheque por $6,000.00 en las instalaciones de Triple S Propiedad. Dicho cheque fue emitido a nombre de mi clienta y a mi nombre. **El mismo fue endosado por mi persona tanto en mi nombre y con el nombre de mi clienta en representación de ésta. Dicho cheque fue depositado por mi persona en una Cuenta de Depósito Especial […] de la Cooperativa Manuel Zeno Gandía.** Dicha cuenta era una Cuenta Especial en la que depositaba solamente dinero relacionado a mi oficina y no se mezclaba la misma con dineros personales. (Énfasis suplido).[3]

Continuó exponiendo que unos días más tarde cursó una carta a la señora Galíndez Osorio para avisarle sobre la transacción consumada y que podía pasar a recoger su participación. En cambio, apuntó que en junio de 2014 se enteró que la cliente no había recibido la comunicación. Atribuyó su falta de seguimiento en este asunto a que su secretaria había renunciado en el verano del 2012. Abordó que en junio de 2014 el personal de la Oficina del Comisionado de Seguros lo visitó, pues Triple-S había realizado una investigación que tuvo el efecto de reclamarle a su Cooperativa el dinero objeto de la transacción. Explicó que el 10 de julio de 2014 la aseguradora emitió un cheque nuevo a favor de la señora Galíndez Osorio y que, debido a los inconvenientes que le causó y la dilación del pago, no le cobró los honorarios que le correspondían por la labor que desempeñó.

El 14 de febrero de 2017, a través de una resolución, designamos a la Hon. Georgina Candal Segurola ——Ex Jueza

---

[3] Íd., págs. 3-4.

Superior del Tribunal de Primera Instancia— como Comisionada Especial y le encomendamos que recibiera evidencia y rindiera un informe en el que consignara sus determinaciones de hechos y las recomendaciones que estimara pertinentes. Así las cosas, tras múltiples trámites procesales, que incluyen la celebración de una vista en su fondo, el 4 de mayo de 2018 la Comisionada Especial presentó su *Informe*.

En lo referente al *primer y segundo cargo*, concluyó que el licenciado Peña Ríos violó los Cánones 18 y 19 de Ética Profesional. Aunque entendió que el letrado demostró conocimiento y diligencia al atender la reclamación de la clienta, estimó que en los quehaceres ejecutados, luego de la oferta de transacción, no informó ni consultó a su cliente la transacción propuesta por Triple-S.[4] Sostuvo que "[e]l querellado no mantuvo informada a la señora Galíndez de los asuntos importantes como la oferta de transacción, el relevo de responsabilidad y el recibo del pago en la transacción de su caso".[5] Arguyó que, independientemente a la *alegación* del licenciado Peña Ríos de que la clienta lo autorizó a transigir el caso, ese hecho no lo relevaba de su responsabilidad de mantenerla informada de todo asunto importante.

Respecto al *tercer cargo*, la Comisionada Especial razonó que el letrado quebrantó el Canon 23 puesto que

---

[4] *Informe*, pág. 36.
[5] Íd.

admitió que endosó el cheque a nombre de su clienta, lo depositó en su cuenta bancaria, retuvo el dinero por más de un año y utilizó parte de este.

Sobre el *cuarto cargo*, la Comisionada Especial entendió que el licenciado Peña Ríos infringió el Canon 35. Esto, ya que, al firmar el documento de descargo por la señora Galíndez Osorio, indujo a Triple-S a creer que su clienta consintió a la transacción. También, determinó que su acto de endosar el cheque a nombre de la señora Galíndez Osorio fue una representación falsa que atentó contra la realidad e indujo a la Cooperativa a error.

En cuanto al *quinto cargo*, la Comisionada Especial estimó que el letrado violó el Canon 38 "al no informar ni consultar con su clienta la aceptación de la oferta de transacción; al firmar el relevo o carta de descargo y el endoso del cheque, y al depositar la compensación de esta en su cuenta, reteniendo el dinero de su clienta por más de un año".[6] Añadió, además, que el licenciado Peña Ríos laceró el honor y la dignidad de la profesión, y que su conducta dio la apariencia de ser impropia y en beneficio propio.

Finalmente, con el objetivo de ponderar la sanción que debía ser impuesta, la Comisionada Especial enfatizó que el letrado no ocultó sus actuaciones, admitió su responsabilidad, reflexionó sobre su proceder y tomó medidas para no repetir los hechos. Plasmó que el

---

[6] Íd., pág. 41.

licenciado Peña Ríos gozaba de una reputación buena y que la señora Galíndez Osorio fue resarcida. Consideró que los sucesos que dieron lugar a este proceso eran aislados. En vista de esto, recomendó que le ordenáramos al letrado tomar un curso sobre los Cánones de Ética Profesional y lo censuráramos enérgicamente.

El 24 de mayo de 2018 el licenciado Peña Ríos nos presentó una *Moción en cuanto a informe presentado por la Honorable Comisionada Especial* en la que, en esencia, acogió la recomendación aludida y explicó que esta era cónsona con asuntos disciplinarios similares.

Plasmados los hechos, pasemos a examinar la norma que les aplica.

## II

Dado a nuestro poder inherente para reglamentar la profesión de la abogacía en Puerto Rico, tenemos la tarea de asegurarnos que todos los abogados y las abogadas ejecuten sus funciones de forma responsable, competente y diligente.[7] Con la finalidad de cumplir parte de nuestra encomienda, promulgamos un Código de Ética Profesional en el cual plasmamos las normas *mínimas* de conducta que los letrados y las letradas, que tienen el privilegio de ejercer nuestra ilustre profesión, deben observar.[8]

[7] *In re Oyola Torres*, 194 DPR 437 (2016); *In re Vera Vélez*, 192 DPR 216, 226 (2015).

[8] *In re Piñero Parés*, 2019 TSPR 6, 201 DPR ___ (2019); *In re Duquela Fuentes*, 2018 TSPR 208, 201 DPR ____ (2018); *In re Medina Perea*, 2018 TSPR 73, 200 DPR ____ (2018); *In re De Jesús Román*, 192

A continuación, reseñaremos las normas concernientes al comportamiento que se le atribuye al letrado.

**A. Canon 18: Competencia y diligencia que ha de emplear todo y toda representante legal**

El Canon 18 impone a todo abogado y toda abogada la responsabilidad de "defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable". Inclusive, el precepto aludido requiere que estos no acepten compromisos profesionales si están imposibilitados de rendir una labor idónea y competente.[9]

Es por esta sencilla razón que los clientes y las clientas, al contratar representación legal, pueden depositar su confianza en que su representante llevará su causa con sensibilidad, eficiencia y pericia.[10] Un togado o una togada quebranta su deber de diligencia cuando acoge el encargo de representar a una persona y no lo lleva a cabo de manera adecuada y responsable.[11] La manera adecuada de hacer las gestiones "supone que el abogado conozca los requerimientos en cuanto a la forma que se establecen para realizar un procedimiento".[12] También, al "no realiza[r]

---

DPR 799, 802 (2015); *In re Guemárez Santiago*, 191 DPR 611, 617-618 (2014); *In re Falcón López*, 189 DPR 689 (2013).

[9] *In re Vilches López*, 170 DPR 793, 798 (2007).

[10] *In re Mulero Fernández*, 174 DPR 18, 30 (2008).

[11] *In re López Santiago*, 199 DPR 797, 811 (2018).

[12] S. Steidel Figueroa, *Ética y responsabilidad disciplinaria del abogado*, San Juan, Pubs. JTS, 2010, pág. 179.

las gestiones que se le encomendaron en el momento oportuno, de la forma adecuada y sin retrasos".[13] Además, si presta atención indebida a la causa encomendada.[14] Todas estas exigencias se justifican pues en nuestra profesión no hay margen para actuar con desidia, despreocupación, indiferencia e inacción.[15]

Ahora bien, aclaramos que "la falta de diligencia que da lugar a sanciones éticas tiene que ser crasa, que denote falta de competencia o un menosprecio al sistema de administración judicial".[16]

**B. Canon 19: Información al representado o representada**

Para que un abogado o una abogada represente los intereses de sus clientes de manera diligente y responsable es trascendental que los mantenga informados sobre aquellas cuestiones importantes que emanen durante el trámite de su causa.[17] Es por ello que los letrados y las letradas tienen que "mantener informado a su cliente de las gestiones realizadas y del desarrollo de los asuntos a su cargo, consultándole cualquier duda sobre asuntos que no caigan en el ámbito discrecional, y dentro de los medios permisibles, cumplir con sus instrucciones".[18] Este deber constituye "un elemento

---

[13] *In re Pietri Torres*, 191 DPR 482, 488 (2014).

[14] *In re López Santiago*, supra.

[15] Íd.

[16] *In re Armenteros Chervoni*, 195 DPR 693, 701 (2016).

[17] *In re Rivera Nazario*, 193 DPR 573, 584 (2015).

[18] *In re Franco Rivera*, 160 DPR 237, 260-261 (2006).

imprescindible de la relación fiduciaria del abogado y el cliente".[19] Se fundamenta en el hecho de que "los casos pertenecen a los clientes y ellos tienen derecho a estar informados de todos los trámites importantes que sucedan".[20] Valga destacar que la obligación de mantener una vía de comunicación amplia recae sobre el abogado o la abogada y no en la persona representada, por tal motivo la hemos nominado unidireccional.[21] Incumplir con este deber constituye una clara violación ética.[22]

No obstante, la responsabilidad que fija el Canon 19 de mantener a los clientes y las clientas comunicados no comprende toda cuestión, sino que es menester que se trate de "todo **asunto importante** que surja en el desarrollo del caso que le ha sido encomendado" (Énfasis suplido). Ahora bien, ¿qué constituye un asunto importante?[23], el juez y profesor Sigfrido Steidel Figueroa plantea que

> [e]l factor esencial para hacer una determinación al respecto parece estar vinculado al grado de control que debe tener el cliente sobre su caso; es decir, la información que debe tener por su condición de *dueño* del caso. Así, parece lógico pensar que el deber de informar de un abogado se extiende, al menos, a toda aquella

---

[19] *In re Colón Ortiz*, 171 DPR 855, 860 (2007); *In re Alonso Santiago*, 165 DPR 555, 563 (2005).

[20] *In re Muñoz Morell*, 182 DPR 738, 753 (2011).

[21] *In re Prado Galarza*, 195 DPR 894, 905 (2016); *In re Rivera Nazario*, supra, pág. 584.

[22] *In re Muñoz Morell*, supra.

[23] Sobre este particular, hemos resuelto que "un abogado infringe el Canon 19 cuando no atiende los reclamos de información de su cliente, no le informa de un resultado adverso en la gestión encomendada, no mantiene informado al cliente con relación al estado o la situación procesal del caso o, simplemente, cuando le niega información de su caso". *In re Otero Calero*, 2018 TSPR 112, en la pág. 12, 200 DPR ___ (2018).

información sobre gestiones o asuntos que: (1) afecten o prolonguen la continuidad del pleito; [o] (2) de ser conocidos por un cliente, pudiera razonablemente llevarlo a finalizar el pleito.[24]

Es por ello que las ofertas transaccionales que son cursadas por la parte contraria a un o una representante legal son cuestiones importantes que ineludiblemente tiene que notificar a su cliente.[25] Su importancia es tal que, *ad verbatim*, el propio canon erige que "es deber del abogado **notificar** a su cliente de cualquier oferta de transacción hecha por la otra parte". (Énfasis suplido).[26]

### C. Canon 23: **Manejo de los bienes del cliente o la clienta**

En lo que nos compete, el Canon 23 establece lo siguiente:

> La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, **debe darse pronta cuenta del dinero u otros bienes del cliente que venga en su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen**. (Énfasis suplido).

De manera que un togado o una togada incurre en conducta impermisible, lesiva a la profesión legal, y por ende, transgrede esta norma ética cuando **retiene sin autorización** algún monto de dinero perteneciente a su cliente o clienta, o dispone de estos inapropiadamente.[27] Nótese que es la mera acción de retener un bien o

---

[24] Steidel Figueroa, *op. cit.*, pág. 193.

[25] *In re Ríos Ríos*, 175 DPR 57 (2008); Steidel Figueroa, *op. cit.*, pág. 194.

[26] 4 LPRA Ap. IX.

[27] *In re Torres Vinals*, 180 DPR 236, 245 (2010); *In re Colón Hernández*, 189 DPR 275, 284 (2013).

cualquier cantidad monetaria correspondiente al representado o la representada lo que trastoca el postulado del Canon 23 del Código de Ética Profesional y denota un menosprecio hacia los deberes como abogado o abogada.[28]

En consideración a ello, hemos determinado que los actos que quebrantan este precepto ético no tienen que ser intencionados. De hecho, también hemos expuesto que la falta de intención de apropiarse de una cuantía de dinero de forma permanentemente no exime a un letrado o una letrada de responsabilidad profesional.[29] Lo mismo acontece cuando el o la profesional del Derecho devuelve el dinero retenido.[30] Inclusive, hemos pronunciado que "la dilación en devolver esos fondos de por sí será causa suficiente para infringir el Canon 23".[31]

**D. Canon 35: Deber de sinceridad y honradez**

La verdad constituye una cualidad ínsita e inseparable de la profesión legal.[32] En reconocimiento de esto, el Canon 35 define la forma en que el togado y la togada deben conducirse al erigir que: "[l]a conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser **sincera y honrada.** No es

---

[28] *In re García Muñoz*, 170 DPR 780, 790-791 (2007).

[29] *In re Colón Hernández*, supra.

[30] *In re Torres Vinals*, supra, pág. 246.

[31] Íd.

[32] *In re Ramírez Salcedo*, 196 DPR 136, 148 (2016).

sincero ni honrado el utilizar medios que sean inconsistentes con la verdad". (Énfasis suplido). Está terminantemente vedado que un abogado o una abogada se valga de medios que sean incompatibles con la realidad.[33]

La profesión jurídica se encuentra predicada en la búsqueda y defensa de la verdad, por ende, es inherentemente contrario al ejercicio de nuestra ilustre ocupación que los representantes legales se desvíen de su obligación de sinceridad y honradez en toda faceta en que se desempeñen, bien sea en sus vidas profesionales como en las privadas.[34] En otros términos, este comportamiento se exige en todo momento y ante todos.[35] De hecho, hemos reconocido que

> [s]e infringe este deber deontológico con el hecho objetivo de faltar a la verdad en funciones propias de un abogado o cuando, actuando como ciudadano común, se pretende realizar actos o negocios de trascendencia jurídica. Más que un ideal irrealizable, la verdad es atributo inseparable del ser abogado y, sin ella, la profesión jurídica no podría justificar su existencia.[36]

En cuanto a la conducta que quebranta la obligación de sinceridad, "lo fundamental es que se falte objetivamente a los valores de honradez y veracidad, pilares de la profesión legal".[37] El acto antiético es faltar a la verdad indistintamente de los motivos para la

---

[33] *In re Rivera Grau*, 196 DPR 522, 534 (2016).

[34] *In re Sierra Arce*, 192 DPR 140, 147 (2014).

[35] *In re Nieves Nieves*, 181 DPR 25, 42 (2011).

[36] *In re Montañez Miranda*, 157 DPR 275, 281 (2002); *In re Peña Santiago*, 185 DPR 764, 779 (2012).

[37] *In re Ramírez Salcedo*, supra, pág. 149.

falsedad.[38] Es decir, para infringir esta norma es innecesario el elemento deliberativo o la intención de engañar o defraudar.[39] En tal sentido, el no haber obrado de mala fe, deliberadamente o sin intención de engañar no ha sido, ni será, una defensa.[40] La falta de intención o motivo, el no provocar un daño a tercero y el no actuar con mala fe solo es pertinente al momento de ponderar la sanción disciplinaria.[41]

**E. Canon 38: La obligación de preservar el honor y la dignidad de la profesión**

El Canon 38 puntualiza los dos valores principales que deben imperar en los abogados y las abogadas: la dignidad y el honor.[42] Establece que "[e]l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales". Estos valores deben estar latentes tanto en la función de la abogacía como en la vida privada.[43] Esto, debido a que "[l]a práctica de la abogacía, distinto quizás a otras profesiones, conlleva una seria y delicada función ciudadana pues la misma representa servicio, ética y

---

[38] *In re Vázquez Pardo*, 185 DPR 1031, 1043 (2012).

[39] Íd., pág. 1044.

[40] Íd.

[41] *In re Irizarry Rodríguez*, 193 DPR 633, 665 (2015).

[42] *In re Aponte Duchesne*, 191 DPR 247, 258 (2014).

[43] *In re López González*, 171 DPR 567, 577 (2007).

ejemplo".[44] Cuando un letrado no se conduce digna y honorablemente infringe el Canon 38.[45]

La violación de las normas discutidas ha de ser probada con evidencia clara, robusta y convincente.[46]

**F. Determinaciones de la Comisionada Especial**

De ordinario, las determinaciones de hechos que un Comisionado o una Comisionada Especial efectúa son acreedoras de nuestra deferencia, a no ser que se demuestre que estuvieron basadas en pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la evidencia.[47] Después de todo, es la persona en quien hemos delegado la tarea de celebrar la vista, recibir prueba y preparar el informe correspondiente, por tanto, está en una posición similar a la del juez de instancia.[48]

En cambio, respecto a las determinaciones apoyadas en la prueba documental que obra en el expediente, estamos en la misma posición para adoptar, modificar o rechazarlas.[49] Es por ello que la doctrina sobre deferencia no aplica cuando la evidencia son deposiciones, estipulaciones o hechos incontrovertidos por las alegaciones o la prueba.[50]

---

[44] *In re Gaetan y Mejias*, 180 DPR 846, 865 (2011).

[45] *In re Aponte Duchesne*, supra.

[46] *In re Bonilla Berlingeri*, 175 DPR 897, 904 (2009).

[47] *In re Morell Bergantinos*, 195 DPR 759, 765-766 (2016); *In re Rodríguez López*, 196 DPR 199, 209 (2016). Sin embargo, en *In re Rodríguez López*, supra, expusimos que "esta Curia puede adoptar, modificar o rechazar el informe rendido".

[48] *In re Cuevas Borrero*, 185 DPR 189, 201 (2012).

[49] *In re Morell Bergantinos*, supra; *In re Collado Ruiz*, 195 DPR 705, 716 (2016).

[50] *In re Cuevas Borrero*, supra, págs. 201-202.

Plasmados todos los preceptos éticos pertinentes a la resolución del caso, estamos en posición de resolver.

### III

Según reseñado, autorizamos al Procurador General a presentar cargos contra el licenciado Peña Ríos por infringir, presuntamente, los Cánones 18, 19, 23, 35 y 39. En efecto, la Comisionada Especial concluyó que el proceder de este atentó esas normas.

A fin de evaluar si su comportamiento transgredió la Ética Profesional, expondremos una breve síntesis de las estipulaciones de las partes y las determinaciones de hechos de la Comisionada más relevantes.

El 18 de junio de 2012 el licenciado Peña Ríos y la señora Galíndez Osorio firmaron un *Contrato de Servicios Profesionales* ——Exhibit 1 Estipulado—— por el cual este se comprometió a prestar sus servicios legales en una reclamación de daños y perjuicios.[51] Resulta imprescindible destacar que ninguna de las cláusulas allí consignadas facultó al letrado a transigir la causa de acción, ni a endosar el cheque producto del acuerdo en representación de su clienta.

Para ejecutar su encomienda, el 19 de junio de 2012 el licenciado Peña Ríos envió una reclamación a Triple-S, la cual fue denegada.[52] El 7 de marzo de 2012 el letrado

---

[51] *Contrato de servicios profesionales*, Exhibit 1 Estipulado. Surge de la primera estipulación de las partes que la reclamación de la señora fue a raíz de una caída que sufrió el 14 de marzo de 2012.

[52] *Informe*, pág. 22.

solicitó reconsideración. En consecuencia, el 3 de abril de 2013 una representante de la aseguradora le envió un correo electrónico que leía como sigue: "[l]a negligencia está finita, creo nuestra oferta por $6,000 es buena, con el compromiso de tener el cheque listo para hoy si la misma es aceptada antes de las 12:00 am [sic]".[53] El 4 de abril de 2013 Triple-S notificó al licenciado Peña Ríos una carta de relevo y descargo sujeto a la aceptación de la oferta.[54] Ese mismo día, el letrado **"aceptó la oferta** y **firmó la carta de descargo/release** con su nombre **y el nombre de la señora"**.(Énfasis suplido).[55]

Al día siguiente, el licenciado Peña Ríos recogió el cheque que se emitió a su nombre y el de la señora Galíndez Osorio.[56] Acto seguido, lo endosó con su nombre **y el de su clienta**, y lo depositó en una cuenta que estaba bajo su control en una cooperativa.[57] Posteriormente, retiró quinientos dólares como parte de sus honorarios. En cuanto a estos hechos, la Comisionada Especial concluyó que la señora Galíndez Osorio no autorizó la transacción, no firmó la carta de descargo, ni accedió a que se firmara en representación de ella. Tampoco consintió al depósito

---

[53] Exhibit 10 Estipulado.

[54] Íd., pág. 22.

[55] Íd., pág. 23.

[56] Íd., pág. 23. Véase, además el Exhibit 2 Estipulado.

[57] Íd.

de los fondos en la cuenta del licenciado Peña Ríos, ni al uso del referido dinero.[58]

Así las cosas, el 8 de abril de 2013 el letrado remitió una carta a la clienta a través de la cual **le informó ⸺por primera vez⸺ que había transigido su reclamación** por $ 6,000 y que podía pasar a buscar la participación que le correspondía.[59] Empero, la señora Galíndez Osorio nunca recibió la comunicación ya que la dirección a la que se notificó contenía un número de apartamento erróneo; tampoco el licenciado Peña Ríos la obtuvo de vuelta.[60] Por esa razón, la clienta nunca pasó a recoger el dinero, ni el letrado le hizo entrega de cantidad alguna producto de la estipulación.[61] Por cierto, la señora Galíndez Osorio se enteró de la transacción porque el Departamento de Hacienda le notificó que no había pagado las contribuciones correspondientes sobre esa suma monetaria.

Un abogado o abogada infringe el Canon 18 cuando no realiza las gestiones que le fueron encomendadas **en el momento oportuno, de la forma adecuada y sin retrasos.** Reconocemos que el licenciado Peña Ríos demostró

---

[58] Íd., pág. 32.

[59] En la comunicación, el letrado consignó lo siguiente: "Es con sumo placer que le informo que su caso contra Seguros Triple S fue transado por $6,000 en días recientes. Su participación del cheque luego de descontado el 33% de honorarios acordados está disponible para recogerlo en mi oficina a su conveniencia".

[60] *Informe*, pág. 31.

[61] *Íd.*, pág. 23. Ahora bien, el letrado si devolvió el dinero a la Cooperativa ya que, por la investigación que se llevó a cabo, esta a su vez se vio precisada a devolverlo.

competencia y diligencia durante gran parte del trámite delegado. Especialmente, puesto que obtuvo una oferta transaccional luego de que la aseguradora negara su responsabilidad en dos ocasiones. No obstante, esa diligencia desplegada por el letrado no lo releva de su responsabilidad de entregarle, oportunamente, a la señora Galíndez Osorio el producto de sus esfuerzos. Este debió emplear un mayor esfuerzo que el envío de una carta para entregar el dinero de la estipulación a la clienta para así concluir su gesta profesional, dadas las circunstancias. Después de todo, el objetivo final de la señora Galíndez Osorio era ser resarcida por los daños y perjuicios sufridos, razón por la cual obtuvo representación legal. Más aún cuando Triple-S entregó el cheque producto del acuerdo al letrado. Además, el no tener un secretario o secretaria no es una excusa válida para infringir el deber de diligencia.

En lo atinente al Canon 19, este impone una carga al togado o a la togada de comunicarle al dueño del caso —su cliente o clienta— aquellos asuntos importantes que surjan durante la representación legal. Las ofertas transaccionales son asuntos no discrecionales importantísimos que deben informarse debido a que reúnen dos características, a saber: 1) afectan la prolongación de una reclamación; y 2) pueden mover al cliente a finalizarla. Movidos por esta realidad, impusimos *expresamente* a los abogados y las abogadas la obligación

ineludible de **notificar** al cliente toda **<u>oferta</u>** de transacción para que sea este quien finalmente la apruebe.[62]

La Comisionada Especial determinó que el letrado infringió su deber de mantener comunicada a la señora Galíndez Osorio pues no informó la oferta de transacción, el relevo de responsabilidad y el recibo del pago de la transacción. Estimó que, pese a su alegación de que había sido autorizado *a priori*, este venía obligado a notificar la oferta. En su defensa, luego de negar responsabilidad, el letrado sostuvo que la clienta, dado que no podía obtener más prueba, le permitió continuar la reclamación hasta su fin con la evidencia que tenía. Con ello, pretende persuadirnos de que no tenía que notificar la oferta ya que la señora Galíndez Osorio lo autorizó a transigir la reclamación. En otros términos, su contención es que transó el caso porque entendió que el consentimiento de la clienta para continuar la encomienda con la evidencia provista ─ante la imposibilidad de proveer más prueba─ equivalía a permitirle transar el caso sin antes consultarle.[63]

Sin duda, cuando una persona adquiere representación legal delega una encomienda y faculta a su representante

---

[62] 4 LPRA Ap. IX.

[63] Específicamente, expuso lo siguiente: "La cliente otorgó al suscribiente autorización para el manejo posterior de esta reclamación hasta su culminación basado en mi experiencia en el manejo de este tipo de caso y sobre todo tomando en consideración que su reclamación ya había sido denegada en dos ocasiones por la compañía". *Contestación a la querella*, pág. 7.

el realizar a su nombre ciertas gestiones en contemplación de su pericia legal. Cabe inquirir, ¿la contratación concedió al letrado la autoridad para *aceptar* un acuerdo transaccional sin antes consultarle a la señora Galíndez Osorio? Con el propósito de auscultar ese planteamiento, es relevante observar la Sección 33 del *Restatement of the Law Third, The Law Governing Lawyers* que discute la autoridad que, de ordinario, un cliente se reserva al obtener representación legal. La sección aludida establece lo siguiente:

> (1) As between client and lawyer, subject to Subsection (2) and §34, the following comparable decision are **reserved to the client except when the client has validly authorized the lawyer to make particular decision: <u>whether and on what terms to settle a claim</u>**; how a criminal defendant should plead; whether a criminal defendant should waive jury trial; whether a criminal defendant should testify; and whether to appeal in a civil proceeding or criminal prosecution.
> (2) A client may not validly authorize a lawyer to make decisions described in Subsection (1) when other law (such as criminal procedure rules governing pleas, jury trial waiver, and defendant testimony) requires the client's personal participation or approval.
> (3) Regardless of any contrary agreement with a lawyer, a client may revoke a lawyer's authority to make the decisions described in Subsection (1). (Énfasis y subrayado suplido).[64]

Subsiguientemente, en los comentarios se plasmó que:

> This Section specifies decisions that **fall outside a lawyer's presumptive authority** (see §32(3)) and that a client may always choose to make, regardless of any contrary agreement with a lawyer.[…]

---

[64] *Restatement of the Law Third, The Law Governing Lawyers*: *Proposed Final Draft*, 1996, pág. 73.

.     .     .     .     .     .     .     .

**This Section forbids a lawyer to make a settlement without the client's authorization**. A lawyer who does so may be liable to the client or the opposing party (see §42) and **is subject to discipline**. […]

In the absence of contrary instructions or agreement, **a lawyer normally has authority to initiate or engage in settlement discussions, although not to conclude them** (see §32). A client may authorize a lawyer to negotiate a settlement that is subject to the client's approval or to settle a matter on terms indicated by the client. […]

The Section allows a client to confer settlement authority on a lawyer, provide that the authorization is revocable before a settlement is reached. **A client authorization must be expressed by the client or fairly implied from the dealings of lawyer and client**. (Énfasis y subrayado suplido).[65]

Como observamos, los conocedores de la materia en Estados Unidos consideran que en una contratación de un abogado o abogada, con términos generales, el cliente se reserva la autoridad para aceptar un acuerdo transaccional. Sin embargo, es posible la **autorización** a un representante legal para que apruebe una oferta de transacción. Ese permiso tiene que ser **expreso** o debe poderse inferir razonablemente de los convenios entre el abogado y el cliente. Ahora bien, este hecho no releva de su deber de notificar al cliente o la clienta que llegó al acuerdo conforme lo prescribe el Canon 19. En ausencia de esta autorización, el abogado que llegue a una estipulación transaccional en representación de su cliente

---

[65] Íd., págs. 74-75.

estará, entre otras cosas, sujeto a sanción disciplinaria.

Así, según la American Bar Association:

> […] a lawyer who receives from opposing counsel an offer of settlement in a civil controversy […] **must promptly inform the client of its substance** unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer. (Énfasis y subrayado suplido).[66]

Ante la carencia de un acuerdo o una instrucción del cliente o clienta, en el *Restatement* se explica lo que sigue:

> A lawyer has authority to take any lawful measure within the scope of representation (see §30) that is reasonably calculated to advance a client's objectives as defined by the client (see §28), unless there are contrary agreements or instructions and unless a decision is reserved to the client (see §33). A lawyer, for example, may decide whether to move to dismiss a complaint and what discovery to pursue or resist. Absent contrary agreement or instruction or legal obligation (see §34(2)), a lawyer thus remains free to exercise restraint, to accommodate reasonable request of opposing counsel, and generally to conduct the representation in the same manner that the lawyer would recommend to other professional colleagues. **Signing a client's name to endorse a settlement check, however, is normally unauthorized, and indeed may be a crime**. (Énfasis y subrayado suplido).[67]

No albergamos duda de que el *Contrato de servicios profesionales* **no** facultó al letrado para consentir a un acuerdo transaccional. Igualmente no podemos acoger la

---

[66]https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_4_communications/comment_on_rule_1_4/

[67] *Restatement of the Law Third, The Law Governing Lawyers: Proposed Final Draft*, *op. cit.,* págs. 69-70.

inferencia que el letrado pretende de que, por su clienta no tener más evidencia, estaba autorizado a culminar la causa a su discreción mediante una estipulación. Tampoco podemos deducirlo razonablemente de los hechos. Dado que no se le dio esa facultad, el letrado estaba obligado a informar la **oferta** de transacción para que la señora Galíndez Osorio decidiera si finalmente la aceptaba o rechazaba. Esto no sucedió. En cambio, el letrado, sin saberlo la clienta, aceptó la oferta, firmó por ella el relevo de responsabilidad, recogió el cheque y lo depositó en su cuenta bancaria. Indudablemente, sus actos quebrantaron la responsabilidad de mantenerla informada conforme al Canon 19. A ello se le suma que las partes estipularon que "[e]ntre mayo de 2013 a junio de 2014 **no hubo comunicación alguna** entre el licenciado Peña Ríos y la Sra. Nérida Galíndez Osorio". (Énfasis suplido).[68]

De hecho, el Canon 23 exige a todo letrado y toda letrada que dé pronta cuenta a su cliente o clienta del dinero y los bienes de este que advenga en posesión. Este precepto es transgredido con la mera retención no autorizada de una suma monetaria o de un bien que pertenezca al cliente. Al evaluar si un representante legal infringe este deber es inconsecuente su intención de

---

[68] Es inmeritorio el planteamiento del licenciado Peña Ríos a los fines de que la clienta no se comunicó para inquirirle sobre el estado de su reclamación. La obligación que impone el Canon 19 no es a la clienta, es un deber unidireccional del letrado.

apropiarse del bien o del dinero, igualmente su devolución.

La Comisionada Especial estimó que el letrado quebrantó esta obligación ya que, según admitió, endosó el cheque a nombre de la señora Galíndez Osorio, lo depositó en su cuenta bancaria, lo retuvo por más de un año y utilizó parte de este. El letrado reconoció y lamentó el retraso en el pago de la compensación.[69] Aceptó que, debido a "la autorización brindada por la cliente para el manejo ulterior del caso", firmó el cheque por ella y lo depositó en una cuenta que tenía para asuntos relacionados con su oficina.[70] Justificó su comportamiento como un intento de facilitar a la señora Galíndez Osorio el proceso del cobro de la transacción, de modo que esta únicamente tuviera que acudir a su oficina una sola vez. Respecto al retraso, expuso que fue dado a la renuncia de su secretaria **en verano de 2012.**

Es indiscutible que el letrado buscó el cheque y lo depositó en su cuenta bancaria y lo devolvió poco más de un año después, hasta el 30 de junio de 2014, cuando se vio obligado a devolver a la Cooperativa $ 6,015.[71] Además, la Comisionada Especial determinó que

---

[69] Incluso, desde la *Contestación a queja*, pág. 6, dispuso que "[l]a falla que reconoce el suscribiente es haber errado en su juicio al endosar el cheque recibido con el propósito de facilitar a la cliente el pago de su participación sin pasar por las molestias o inconvenientes que puede acarrear a una persona mayor de edad con osteoartritis el tener que comparecer a un banco a cambiar un cheque".

[70] Íd., pág. 8.

[71] *Informe*, págs. 24-25.

> [l]a cuenta de ahorros […] en la Cooperativa Zeno Gandía está bajo el control del querellado y él la utilizaba para depositar fondos relacionados a su oficina, Exhibit 5A, 5B y 6 estipulado. Admitió el Querellado que él utilizó los fondos de esa cuenta, incluyendo $5,500 que quedaban depositados por la transacción con Triple S y que nunca hizo entrega a la Sra. Galíndez de ese dinero, Estipulación 13A.[72]

El letrado, al retener y utilizar el dinero producto de la transacción, vulneró el Canon 23. Resulta irrelevante su intención de facilitarle el proceso de cobro a su clienta. En este momento, es inconsecuente si devolvió el dinero.[73] Esto, debido a que para infringir este deber es suficiente la mera retención no autorizada del mismo.

A su vez, el Canon 35 ordena a los miembros de la profesión que sean sinceros y honrados en cualquier faceta que se desempeñen. Observamos que el abogado o la abogada quebranta esta responsabilidad cuando falta a la verdad objetivamente independientemente de si tuvo o no intención de hacerlo. La Comisionada Especial encontró que el letrado violó esta norma pues firmó por su clienta el relevo de responsabilidad y, al hacerlo, indujo a Triple-S a pensar que la señora había consentido, lo que no fue cierto. Igualmente al endosar el cheque a nombre de la señora Galíndez Osorio.

---

[72] Íd., pág. 32.

[73] Ahora bien, este es un factor que ponderamos a la hora de fijar la sanción correspondiente.

No obstante, el letrado negó responsabilidad al expresar que

> [n]ada de lo establecido en este canon fue infringido por el abogado suscribiente durante el manejo de este caso. Este asunto se dio en un marco de transacción extrajudicial con una compañía de seguros y la causa de la cliente fue manejada con éxito ante ésta. La relación con la cliente siempre se mantuvo en el plano de la sinceridad y honradez. Los hechos posteriores que complicaron el trámite de pago no inciden con la sinceridad y [el] honor que requiere el Canon.[74]

Los planteamientos del letrado son inmeritorios. Es categóricamente cierto, puesto que así las partes estipularon, que el letrado firmó el relevo de responsabilidad y endosó el cheque a nombre de la clienta. Con esto en mente cabe preguntarnos ¿es verdad que la relación con la señora Galíndez Osorio se mantuvo en el plano de sinceridad y honradez? Evidentemente, la respuesta es no.

Resulta meridianamente claro que una relación profesional en la que un abogado o abogada, al actuar presuntamente en representación del cliente o la clienta, pero sin su consentimiento, firma un relevo de responsabilidad y endosa un cheque a su nombre, no está cimentada en honestidad y sinceridad. Al proceder de esa forma, el letrado faltó a la verdad objetivamente.

Ciertamente, con todos estos sucesos en mente, es forzoso concluir que el letrado tampoco exaltó la dignidad y el honor de la profesión como lo exige el Canon 38.

---

[74] *Contestación a la querella*, pág. 10.

**IV**

Justipreciado que el licenciado Peña Ríos contravino su deber de diligencia, honestidad y sinceridad, no mantuvo a su clienta informada, no dio pronta cuenta de los bienes de esta, ni exaltó la dignidad y el honor de tan ilustre profesión, nos corresponde decidir la sanción disciplinaria que le aplicaremos.

De entrada, en este quehacer debemos tener presente que los procesos disciplinarios, más allá de condenar las conductas antiéticas de los letrados y las letradas, procuran salvaguardar la integridad de la abogacía y la sociedad.[75] Es por esto que, a la hora de disponer una sanción disciplinaria, hemos elaborado varios factores para considerar, a saber: (1) la reputación del abogado o la abogada en la comunidad; (2) su historial; (3) si se trata de su primera falta; (4) si ninguna persona resultó perjudicada por su actuación; (5) si admitió la falta y mostró arrepentimiento; (6) si su comportamiento fue aislado; y (7) cualquier otra consideración, bien sea atenuante o agravante, que emane de los hechos.[76] Empero, debemos aclarar que ninguna de estas contemplaciones es, de por sí, concluyente para dictaminar la sanción que impondremos.[77]

---

[75] *In re Irizarry Rodríguez*, supra, pág. 668.

[76] *In re Otero Calero*, supra, págs. 26-27; *In re Reyes Coreano*, 190 DPR 739, 757 (2014).

[77] *In re Irizarry Rodríguez*, supra.

En ese ejercicio, también, tenemos que estar conscientes de que "[c]asos similares ameritan sanciones similares".[78] En otros términos, las sanciones impuestas a otros abogados u otras abogadas en casos semejantes nos van a servir de guía.[79] Claro está, "cada caso es único, por lo que, en última instancia, las circunstancias particulares de cada uno son determinantes al momento de imponer la sanción".[80]

Al realizar esta tarea, la Comisionada Especial enfatizó que el letrado no ocultó sus actuaciones, admitió su responsabilidad, reflexionó sobre su proceder y tomó medidas para no repetir los hechos. Plasmó que el licenciado Peña Ríos gozaba de una reputación buena y que la señora Galíndez Osorio fue resarcida. Consideró, además, que los sucesos que motivaron este procedimiento eran aislados. En virtud de estas circunstancias, sugirió que ordenáramos que tomara unos cursos de Ética e impusiéramos una censura enérgica.

Por su parte, el letrado arguyó que, por estos hechos, enfrentó un proceso criminal del cual salió

---

[78] *In re González Acevedo*, 165 DPR 81, 104 (2005).

En ese sentido, resulta relevante observar nuestra decisión en *In re Álvarez Aponte*, 158 DPR 140 (2002). En ésta, suspendimos de la abogacía por un término de seis meses al licenciado Álvarez porque recibió un cheque de transacción a nombre de su representada, no se lo informó, lo endosó y depositó en su cuenta comercial. Es menester destacar que **la representada autorizó el negocio**. Consideramos como atenuante el que el abogado devolvió el dinero y que solo lo retuvo por un periodo corto, veintidós días. Finalmente, dispusimos que "[e]l querellado no debió, sin autorización de la quejosa, endosar el cheque para depositarlo en su cuenta". Íd., pág. 148.

[79] *In re Villalba Ojada*, 193 DPR 966, 982 (2015).

[80] *In re De León Rodríguez*, 190 DPR 378 (2014).

absuelto. Por esa razón, apunta que no lo debemos exponer a ser castigado en dos ocasiones con un *quantum* de prueba similar. Debemos recordarle que "los procedimientos disciplinarios ante este Tribunal son **independientes de las acciones legales, ya sean criminales o civiles que se deriven de la misma relación de hechos**". (Énfasis suplido).[81] Es por ello que nuestra facultad disciplinaria no está supeditada a la determinación y el fallo que un juez realice en un proceso penal.[82] Es decir, nuestra autoridad "no depende del resultado de un proceso criminal".[83] Además, el *quantum* probatorio en esta causa es prueba clara, robusta y convincente.[84]

Disipado esto, sin más, veamos la sanción que corresponde aplicar. El licenciado Peña Ríos goza de buena reputación, esta es su primera falta disciplinaria y los hechos son aislados. Si bien, la clienta se vio perjudicada, ya que recibió su dinero tardíamente y tuvo que comparecer tanto en el proceso criminal como en el disciplinario, esta se mostró satisfecha con la representación legal y gestiones desplegadas por el letrado. Por otro lado, desde el comienzo de este procedimiento el licenciado Peña Ríos aceptó que cometió un error de juicio, pero negó algunas violaciones. No obstante, en su última comparecencia aceptó su

---

[81] *In re Deynes Soto*, 164 DPR 327, 337 (2005).

[82] *In re Soto López*, 135 DPR 642, 646 (1994).

[83] *In re Deynes Soto*, supra, pág. 335.

[84] *In re Bonilla Berlingeri*, supra.

responsabilidad, reflexionó sobre su proceder y manifestó que tomó medidas para no repetir sus actos. Finalmente, el letrado devolvió el dinero que retuvo.

Al ponderar los atenuantes y agravantes, así como los casos anteriores, opinamos que una censura enérgica no es una sanción proporcionada en estas circunstancias. Después de todo, en *In re Álvarez Aponte*, 158 DPR 140 (2002), suspendimos a un togado por un plazo de seis meses por solo endosar un cheque transaccional a nombre de su representada —**esta había consentido al negocio**— depositarlo en su cuenta y retenerlo por veintidós días. En la situación de autos, el licenciado Peña Ríos transó la reclamación de su clienta, sin su conocimiento ni consentimiento, firmó el cheque a nombre de esta, lo depositó en su cuenta bancaria y utilizó el dinero. Además, la señora Galíndez Osorio se enteró de la estipulación y recibió el dinero luego de más de un año desde que la transacción tuvo lugar.

## V

Por las razones expuestas suspendemos inmediatamente al licenciado Peña Ríos de la profesión legal y del ejercicio notarial por un término de seis meses. Por ende, su fianza notarial queda automáticamente cancelada y se considerará buena y válida por tres años después de su terminación para los actos ejecutados durante el periodo en que estuvo vigente. El Alguacil de este Tribunal tendrá que incautar la obra y sello notarial del letrado y

entregarlos al Director de la Oficina de Inspección de la Notarías.

Imponemos al licenciado Peña Ríos la obligación de informar inmediatamente a todos o todas sus clientes de su inhabilidad para seguir representándolos y de restituir los honorarios recibidos por las labores no ejecutadas, así como los documentos que tenga bajo su custodia. Además, tendrá que comunicar su suspensión a los foros judiciales y administrativos de Puerto Rico en los cuales tenga algún asunto pendiente. Por último, le concedemos un término de treinta días, una vez notificada la Opinión y Sentencia, para que nos acredite y certifique su cumplimiento con lo anterior.

Se dictará sentencia de conformidad.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| *In re*:<br>Allan A. Peña Ríos<br>(TS-11,445) | CP-2016-0005 | |

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de marzo de 2019.

Por los fundamentos expuestos en la Opinión que antecede, y que aquí se hace formar parte, suspendemos inmediatamente al Sr. Allan A. Peña Ríos de la profesión legal y del ejercicio notarial por un término de seis meses. Su fianza notarial queda cancelada automáticamente y se considerará buena y válida por tres años luego de su terminación para los actos realizados cuando estuvo vigente. El Alguacil de este Tribunal tendrá que incautar la obra y sello notarial de del letrado y entregarlos al Director de la Oficina de Inspección de la Notarías.

Imponemos al señor Peña Ríos la obligación de informar inmediatamente a todos sus clientes de su inhabilidad para seguir representándolos y de restituir los honorarios recibidos por las labores no ejecutadas y los documentos que tenga bajo su custodia. Además, tendrá que comunicar su suspensión a todos los foros judiciales y administrativos de Puerto Rico en los cuales tenga algún asunto pendiente. Por último, le concedemos un término de treinta días, a partir de la notificación de la Opinión y Sentencia, para que nos acredite y certifique su cumplimiento con lo anterior.

Notifíquese de inmediato.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo